IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CMFG LIFE INSURANCE COMPANY,<br>    *Plaintiff/Counter-Defendant,*<br><br>v.<br><br>ASHLEY NANCE,<br>    *Defendant/Counterclaimant* | No. 24-cv-01034-ABA |

**MEMORANDUM OPINION**

This case is about the validity of a life insurance policy for the life of Guy A. Martin ("Mr. Martin"). Following Mr. Martin's death in December 2023, the policy's sole beneficiary, Ashley Nance ("Ms. Nance" or "Counterclaimant"), filed a claim under the policy, which the insurer, CMFG Life Insurance Company ("CMFG" or "Counter-Defendant"), denied. ECF No. 13 at 14, ¶ 29. CMFG filed this case seeking a declaratory judgment that the policy is void *ab initio* based on its assertions that Ms. Nance obtained the policy for Mr. Martin and that Ms. Nance lacked a valid insurable interest in the policy. *See* ECF No. 1, Md. Code Ann., Ins. § 12-201(b). In responding to the complaint, Ms. Nance denied CMFG's allegations, but also sought payment of the insurance proceeds and attorneys' fees and costs, and filed a counterclaim for fraudulent misrepresentation. ECF No. 13 at 7-8, 16. CMFG has moved to dismiss the fraudulent misrepresentation counterclaim. ECF No. 19. The motion will be granted, and the counterclaim will be dismissed for failure to state a claim on which relief can be granted.

## BACKGROUND[1]

Mr. Martin and Ms. Nance were romantic partners who were unmarried, but who, according to Ms. Nance, were "husband and wife for all intents and purposes." ECF No. 13 ("Countercl.") at 1; *id.* at 4, ¶ 20; ECF No. 1 ("Compl.") ¶ 20. On September 5, 2021, CMFG received an online application for a $300,000 term life insurance policy. Countercl. at 3, ¶ 5-6; Compl. ¶ 5-6. The application, for applicant "Guy A Martin," listed the beneficiary as Ashley A. Nance and identified the relationship between the beneficiary and the applicant as "Friend[.]" Countercl. at 3, ¶ 5; Compl. at ¶ 5; ECF No. 1-2 at 2. The application listed Ms. Nance's address (where Mr. Martin did not live), telephone number, and bank account number, as well as the email address "ashley.nance22@yahoo.com." Countercl. at 4-5, ¶¶ 11, 23-24, 27; Compl. ¶¶ 11, 23-24, 27. Ms. Nance alleges that Mr. Martin asked her to use her contact information for the application because he "hoped [she] would take care of the mundane details associated with the Policy." Countercl. at 3-4, ¶ 9.

In November 2022, CMFG received an "Absolute Assignment" form, which requested that Ms. Nance be designated as the owner of the policy and identified Ms. Nance as Mr. Martin's "Partner." Countercl. at 4, ¶ 16; Compl. ¶ 16. CMFG removed Mr. Martin as the owner of the policy and substituted Ms. Nance in his place. Countercl. at 4, ¶ 16; Compl. ¶ 16.

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint[.]" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Because the relevant complaint is Ms. Nance's *counterclaim*, the Court accepts as true the allegations in her answer and counterclaim. Where the answer admits an allegation from the original complaint, the Court cites to both Ms. Nance's admission and the corresponding paragraph in the complaint.

2

Mr. Martin died on December 3, 2023. Countercl. at 4, ¶ 19; Compl. ¶ 19. On December 4, 2023, Ms. Nance called CMFG to begin the process of filing a claim. Countercl. at 4, ¶ 21; Compl. ¶ 21. CMFG deferred paying the claim based on its concerns that the policy might have been procured in violation of Maryland insurance law. ECF No. 13-4 at 53-56. Ms. Nance engaged in numerous communications with CMFG in trying to resolve the claim and eventually hired an attorney. Countercl. at 10-14, ¶ 11-29. Without abandoning her argument that Mr. Martin was the one who had obtained the policy, Ms. Nance, through her attorney, provided CMFG with documentation that she and Mr. Martin owned property together and that she was Mr. Martin's primary medical decisionmaker to try to establish that she had an insurable interest in the policy. Countercl. at 1; ECF No. 13-4 at 22, 37, 47-48, 51. CMFG ultimately denied the claim. Countercl. at 7, ¶ 42.[2]

CMFG filed this case, seeking a declaratory judgment that the policy is void *ab initio* and that it is not obligated to pay the policy's $300,000 death benefit. *See* Compl. ¶¶ 3, 41. Specifically, CMFG contends that Ms. Nance procured the policy for Mr. Martin and identified herself as the policy's beneficiary. *Id.* at ¶¶ 34, 36. CMFG notes that, under § 12-201 of the Insurance Title of the Maryland Code, a person who procures an insurance policy on another person's life cannot herself collect the benefits unless she had an "insurable interest" in the insured individual at the time the contract was made; CMFG asserts that Ms. Nance "had no such insurable interest." *Id.* at ¶ 30, 37; *see also* Md. Code Ann., Ins. § 12-201.

---

[2] CMFG states that it returned the premiums paid on the policy, Compl. at ¶ 41, but Ms. Nance denies this contention. *See* Countercl. at 6, ¶ 41.

Ms. Nance filed an answer, as well as a one-count counterclaim alleging fraudulent misrepresentation. *See* Countercl. In her answer, she denied CMFG's allegations, but also requested "[t]hat the subject life insurance funds be awarded to Defendant Ashley Nance" and that she be awarded her costs and attorneys' fees. *Id*. at 7-8. As for her counterclaim, she alleges that, based on the information provided to CMFG in the application, CMFG "knew it would not provide life insurance benefits when the Insured died" because it could make a "pretextual argument that the Policy lacked an insurable interest[.]" *Id*. at 16, ¶¶ 40-41. She describes her principal theory this way: "[W]hen CMFG issued the policy, CMFG was effectively offering phantom insurance coverage," and specifically made a false representation when it issued a policy that, in her words, "state[d] that a death benefit will be paid when the insured dies" but CMFG "never intended to pay such a death benefit." ECF No. 20 at 2-3. Alternatively, Ms. Nance contends that in November 2022, CMFG determined that it would not provide life insurance benefits after it received the "Absolute Assignment" form that had the same home address and phone number as provided in the original application, and "hatched [a] plan" to avoid paying benefits. Countercl. at 15-16, ¶¶ 36-38, 42.

CMFG has moved to dismiss the counterclaim. ECF No. 19. Ms. Nance filed a response opposing the motion, ECF No. 20, and CMFG filed a reply, ECF No. 21.

## STANDARD OF REVIEW

A complaint, including a countercomplaint, must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims of fraud, like Ms. Nance's counterclaim here, are subject to a heightened pleading standard under the Federal Rules. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").

4

When a defendant asserts that, even assuming the truth of alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). Because the instant motion seeks to dismiss Ms. Nance's counterclaim, the Court focuses only on whether the counterclaim states a claim upon which relief can be granted; it does not consider the merits of CMFG's original complaint or Ms. Nance's answer. A complaint is deemed to include documents attached to it as exhibits. *See* Fed. R. Civ. P. 10(c).[3]

## DISCUSSION

### I. The counterclaim

Ms. Nance's counterclaim, which CMFG seeks to dismiss, raises a single count of fraudulent misrepresentation. Countercl. at 16, ¶¶ 39-45. CMFG has moved to dismiss the counterclaim on three grounds. First, CMFG argues that, as a matter of law, a plaintiff may not "bring any tort claim against an insurance carrier in the context of a first party insurance dispute." ECF No. 19-1 at 6-7 (citing *King v. United States Auto. Ass'n*, No. TDC-21-0515, 2023 WL 2529035 (D. Md. Mar. 14, 2023)). Second, CMFG contends Ms. Nance has not "alleged the existence of any compensable injury" because (1) her only alleged "damages" (other than payment of the death benefits under the policy) are attorneys' fees, and she "has not identified any statute that permits an award of attorney's fees as an element of damages in a fraud case," and (2) "not receiving the policy's life

---

[3] The Court may therefore consider the exhibits attached to the counterclaim (here, ECF Nos. 13-1, 13-2, 13-3, and 13-4). The Court also has considered exhibits attached to the original complaint where the Counterclaimant's answer admitted an allegation in the complaint and where that allegation incorporated an exhibit by reference. *See, e.g.*, Countercl. at 3, ¶ 5 (admitting the allegations in paragraph five of the Complaint); Compl. ¶ 5 (describing the life insurance policy at issue and incorporating by reference a copy of the application in Exhibit A to the Complaint).

5

insurance benefits is not a compensable injury sufficient to support a claim of fraud" because "*regardless* of the outcome of CMFG's declaratory judgment claim, Nance will not be deprived of insurance benefits to which she is entitled, and thus not have suffered any compensable injury." ECF No. 19-1 at 9-10. Third, CMFG argues that, even if such a cause of action were cognizable, Ms. Nance did not adequately plead facts sufficient to make out a misrepresentation claim.[4]

This Court concludes Ms. Nance has not adequately pled the existence of a knowing (or reckless) false misrepresentation, and dismisses the counterclaim on that basis. Accordingly, it need not and does not decide CMFG's arguments about the general validity of a fraudulent misrepresentation claim in the context of a first-party insurance dispute, or whether a cognizable injury has been pled.

**II.     The counterclaim does not state a claim for misrepresentation**

Fraudulent misrepresentation has five elements under Maryland law: "(1) the defendant made a false representation to the plaintiff[;] (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth[;] (3) the misrepresentation was made for the purpose of defrauding the plaintiff[;] (4) the plaintiff relied on the misrepresentation and had the right to rely on it[;] and (5) the plaintiff suffered compensable injury as a result of the misrepresentation." *Hoffman v. Stamper*, 385 Md. 1, 28 (2005). A false representation is

---

[4] CMFG specifically argues the absence of a false statement as a basis for dismissal of Ms. Nance's claim with respect to the time period after November 2022, when CMFG received a change of ownership form identifying Ms. Nance as the new owner. *See* ECF No. 19-1 at 14. But the Court must also decide whether Ms. Nance has sufficiently alleged facts sufficient to sustain her misrepresentation counterclaim. As explained below, she has not.

"a statement, conduct, or action that intentionally misrepresents a material fact." *Sass v. Andrew*, 152 Md. App. 406, 429 (2003).

As noted above, fraud claims must meet a heightened pleading standard. Fed. R. Civ. P. 9 (requiring a party to plead the circumstances constituting fraud "with particularity"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (stating that Rule 9(b) sets forth a "heightened pleading standard"). Generally, the circumstances of fraud that a plaintiff must plead include matters such as "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). "[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). But "[m]ere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)." *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994).

This is what Ms. Nance's counterclaim alleges with respect to an alleged misrepresentation:

> By issuing the Policy and continuing to collect premium payments after November of 2022, CMFG falsely claimed to both Ashley Nance and Guy Martin that it would provide life insurance benefits when the Insured died. This was a false representation given that CMFG knew that it would deny benefits under the pretextual argument that the Policy lacked an insurable interest in the eyes of Maryland law.

Countercl. at 16, ¶ 40.

Ms. Nance offers two alternative theories for why these allegations state a claim for misrepresentation. First, Ms. Nance argues that "CMFG knew, at the time the Policy was issued, that it never intended to provide life insurance benefits when [Mr. Martin] died." Countercl. at 16 ¶ 41. Under this theory, CMFG "hatched a scheme to avoid paying the [policy's] benefits" after receipt of the application in September 2021. *Id.* at 15, ¶ 32. Second and alternatively, Ms. Nance argues that in November 2022, after CMFG received the change of ownership paperwork, "CMFG determined that it would avoid paying life insurance benefits" when Mr. Martin died. Countercl. at 15-16, ¶¶ 37-38. Ms. Nance contends that when CMFG saw that the paperwork listed Ms. Nance's home address and phone number—which matched the information on the original application—it decided there and then to never pay benefits on the policy. *Id.* at 15, ¶¶ 36-38. Neither theory renders her allegations sufficient to state a claim for fraudulent misrepresentation.

### A. Issuance of the policy

Ms. Nance alleges that the issuance of the policy constituted a false representation "that [CMFG] would provide insurance benefits when the insured died." ECF No. 13 at ¶ 40. The policy, of course, does not represent that it *absolutely will* provide insurance benefits upon an insured's death; the policy lists several circumstances—including non-payment of premiums, fraud in the procurement of the policy, or an applicant's material misstatements discovered within the contestable period—under which the benefits would not be payable. ECF No. 1-3 at 10. But "Maryland law recognizes the possibility that statements that are not literally false may nevertheless be fraudulent," such as when a party "'conceals facts that materially qualify affirmative representations.'" *State Constr. Corp. v. Sloane Assocs., Inc.*, 385 F. Supp. 3d 449, 469 (D. Md. 2019) (quoting *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 330 (1996)).

Drawing all reasonable inferences in Ms. Nance's favor, *see King*, 825 F.3d at 212, Ms. Nance essentially alleges that CMFG made an affirmative representation when it issued the policy, but concealed a fact that materially qualified that representation—that is, that it would never pay the policy benefits because it knew one of the circumstances to void the policy existed. *See, e.g.*, ECF No. 13 ¶ 40 (alleging that CMFG "knew that it would deny benefits under the pretextual argument that the Policy lacked an insurable interest in the eyes of Maryland law"). Put another way, Ms. Nance alleges that by issuing a policy that could be voided based on a condition that CMFG knew existed at the time of issuance (*i.e.*, fraud in the procurement of the policy), the company falsely represented that it would be *possible* for Mr. Martin's beneficiary to recover under the policy.

Notwithstanding her conclusory statements to this effect, Ms. Nance has not alleged that, at the time the policy was issued, CMFG knew that it would deny benefits (or was recklessly indifferent to whether it would pay benefits). At most, she has alleged that the company *believed* that it *might* have grounds in the future to contest or seek to void the policy based on facts it may have "gleaned" from the application. *See* Countercl. at 15, ¶ 33. Ms. Nance concedes as much in her counterclaim: "CMFG used th[e] information [in the application] to determine that Maryland's insurance law *would likely find* a mere 'friend' to lack an insurable interest." *Id.* at 15, ¶ 34 (emphasis added). That is, she alleges that CMFG used the information in the application to determine that it could argue (1) that it was Ms. Nance, rather than Mr. Martin, who procured the policy *and* (2) that the "friend" listed as beneficiary did not hold a viable insurable interest.[5] ECF No. 13 ¶ 35.

---

[5] Knowing just one of these two facts would be insufficient. If, as Ms. Nance argues in her answer, Mr. Martin obtained the policy for himself, ECF No. 13 at 2, he could designate anyone he wanted as the beneficiary, even if that person lacked an "insurable interest."

9

This alleged knowledge is far short of constituting an allegation that, at the time of the policy's issuance, CMFG knew (or was reckless) and determined that it would not provide insurance benefits when the insured died.

Additionally, because there are multiple ways to demonstrate an "insurable interest," Ms. Nance's counterclaim does not allege facts to plausibly suggest that CMFG knew that the "friend" listed on the policy necessarily lacked an insurable interest. There are several ways a person can have an insurable interest in the life of another, including relation by blood or law; a substantial economic interest in the continued life and health of the insured (under certain circumstances); some trustee relationships; and certain business partnerships. Md. Code Ann., Ins. § 12-201(b); *see also Beard v. American Agency Life Ins. Co.*, 314 Md. 235, 252 (1988) (stating that courts have considered "several factors as influential in determining whether in a particular case a [business] partnership relationship is of the type which would give rise to an insurable interest among the partners."). The description of a beneficiary as a "friend" on an insurance application is not enough to establish that the individual lacks an insurable interest, and therefore is not enough to allege that CMFG "knew" it would not pay the policy's benefits upon Mr. Martin's death or was reckless with regard to whether it would ever pay benefits upon his death.

---

*See* Md. Code Ann., Ins. § 12-201(a)(1) ("An individual of competent legal capacity may procure or effect an insurance contract on the individual's own life or body *for the benefit of any person*.") (emphasis added). Because the existence of an insurable interest only becomes relevant when the policy has been procured by someone other than the insured, CMFG would have had to know both of these facts for the beneficiary's description as a "friend" to establish that the policy was void from the outset.

10

At most, Ms. Nance's counterclaim alleges that CMFG saw the information on the application and *suspected* that a person other than Mr. Martin procured the policy and that the "friend" listed on the application might not have an insurable interest under Maryland law. This allegation is insufficient to plausibly allege that "the falsity of the representation was . . . known to the defendant or the representation was made with reckless indifference to its truth," as is required to state a claim for fraud. *Hoffman*, 385 Md. at 28.

### B.     Change to ownership form

Ms. Nance's alternative theory—that CMFG formed its fraudulent intent in November 2022 when it received the Change of Ownership for Life Insurance paperwork—fails for a separate reason: Ms. Nance has not alleged any representation, false or otherwise, that CMFG made to her following the submission of the November 2022 form. Ms. Nance states that "[b]y . . . continuing to collect premium payments after November of 2022," the company "falsely claimed" that it would provide life insurance benefits. ECF No. 13 ¶ 40. Ms. Nance has failed, however, to plead "with particularity the circumstances constituting fraud[.]" Fed. R. Civ. Proc. 9(b). That is, her complaint does not include details such as "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby" under her alternative November 2022 theory. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Therefore, Ms. Nance has not sufficiently stated a claim for fraudulent representation based on this alternative theory.

## CONCLUSION

For the foregoing reasons, the Court will grant CMFG's motion and dismiss, without prejudice, Ms. Nance's counterclaim. An appropriate order follows.


Date:  January 3, 2025                                    /s/
                                            Adam B. Abelson
                                            United States District Judge